IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORI SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21 C 2066 |
| ) | |
| LUTHERAN LIFE MINISTRIES, ) | Judge Joan H. Lefkow |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Lori Smith brought this action against Lutheran Life Ministries, her former employer, claiming that she is owed a severance payment and other compensation based on the circumstances of her separation. (Dkt. 1.)[1] Lutheran Life has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 5.) For the reasons below, the motion is granted in part and denied in part.

**BACKGROUND**

Smith filed an action that alleged the following. In September 2018, Smith, who lived near St. Louis, Missouri, was recruited to work for Lutheran Life in Arlington Heights, Illinois. (Dkt. 1 at 2.) In December 2018, Jesse Jantzen, Lutheran Life's president and chief executive officer, sent Smith an offer letter for the position of Chief Operations and Nursing Officer. (*Id.* at 2, 8–9.) The offer letter stated that Smith would not be required to relocate from St. Louis, and she would be provided with temporary executive housing in Arlington Heights, Illinois. (*Id.*)

---

[1] This court has jurisdiction over the action under 28 U.S.C. § 1332, and venue is proper under 28 U.S.C. § 1391(b).

Attached to the letter was a severance agreement that provided for 18 months of severance in the event of a "change in control as outlined in the agreement." (*Id.* at 9.)

Smith accepted Lutheran Life's offer. (*Id.* at 3.) On December 28, 2018, Smith and Jantzen, on behalf of Lutheran Life, executed an "Agreement Under Lutheran Life Ministries Change in Control Severance Plan." (*Id.* at 3, 10–16.) This agreement stated that Lutheran Life established "the Plan … to provide benefits to certain management employees in the event their employment is terminated under the circumstances described herein. Participation in the Plan is evidenced by an individual agreement between [Lutheran Life] and each participating employee." (*Id.* at 10.) It further stated that Smith and Lutheran Life agreed that Smith "shall become a Participant in the Plan[.]" (*Id.*) Section 2 stated that the agreement "evidences [Smith's] participation in the Plan [and] shall be construed and enforced under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), as an unfunded welfare benefit plan." (*Id.*) And the agreement "shall be administered in accordance with the Plan and [Smith] acknowledges receipt of a copy of the Plan." (*Id.* at 11.) The agreement further provided that "[a]ny claim for benefits under this Agreement by [Smith] shall be made in writing pursuant to the claims procedure stated in the Plan." (*Id.* at 14.)

By April 2020, Jantzen left Lutheran Life. (*Id.* at 3.) In September 2020, Lutheran Life hired Sloan Bentley as its new chief executive officer. (*Id.*) In December 2020, Smith noticed that her management and supervisory responsibilities related to information technology, project management, facilities and environmental services, and supervision of the community sales directors had been transferred to a new chief administrative officer position that reported to Bentley. (*Id.*)

2

At some point, Bentley also directed that Smith have increased presence at Lutheran Life and be in person Monday through Friday at least every other week. (*Id.* at 3–4.) Smith was required to vacate the executive housing she had been provided and move her belongings out of the master bedroom, which Smith had furnished with about $10,000 of furniture. (*Id.*)

Smith believed that these changes constituted "constructive termination" as defined in the change in control severance plan agreement. (*Id.*) Under paragraph 9, constructive termination occurs under specifically defined events, and "[t]he Board of Directors of [Lutheran Life] shall determine whether a Constructive Termination of Executive has occurred." (*Id.* at 12–13.)

On January 3, 2021, Smith notified the Lutheran Life board of directors that she was voluntarily terminating her employment per the change in control severance payment agreement, with her last day of employment as February 5, 2021, and she demanded the initiation of her 78 weeks of severance pay. (*Id.* at 4, 17–20.) Her letter noted that the agreement referenced a plan, but she claimed that she "was never provided such a Plan" and she had "been told by very reliable sources that no such 'Plan was created,'" so all details related to her severance plan were "contained only in the [agreement]." (*Id.* at 17.)

Lutheran Life did not pay severance to Smith. (*Id.* at 4.) Smith then filed an action against Lutheran Life, raising two state-law claims. First, she raised a breach of contract claim over the severance payment. (*Id.* at 2–5.) Second, Smith raised a promissory estoppel claim[2] based on her reliance on Lutheran Life's promise that she would not need to relocate to Illinois and would be provided temporary housing. (*Id.* at 5–7.)

---

[2] As explained in the Analysis, Smith incorrectly titled this claim "equitable estoppel," but clarified in her response to the motion to dismiss that she intended to plead promissory estoppel.

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. On a motion under Rule 12(b)(6), the complaint's factual allegations, not legal conclusions, are taken as true and all reasonable inferences are drawn in plaintiff's favor. *See Iqbal*, 556 U.S. at 678–79; *Ashcroft* v. *al-Kidd*, 563 U.S. 731, 734 (2011).

Documents that are attached to a complaint are considered part of that pleading. Fed. R. Civ. P. 10(c). Likewise, a document attached to a motion to dismiss can be considered part of the pleading if that document was referenced in the complaint and is central to a claim, provided that the document requires no discovery to authenticate or disambiguate. *See Tierney* v. *Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). And if a document explicitly references terms in another document, that second document also is incorporated. *See 188 LLC* v. *Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). Attached and incorporated documents may therefore be considered in resolving a Rule 12(b)(6) motion without converting it to a motion for summary judgment. *See Tierney*, 304 F.3d at 738.

## ANALYSIS

Lutheran Life moves to dismiss the breach of contract claim as preempted by an ERISA plan, as provided under section 1144(a) of ERISA. ERISA was enacted to safeguard employee benefits by governing the administration of employee welfare and pension benefit plans. *See* 29 U.S.C. §§ 1001, 1002(1)–(3), 1102; *Fort Halifax Packing Co., Inc.* v. *Coyne*, 482 U.S. 1, 7, 11

4

(1987). Where an ERISA plan exists, it preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). Preemption under section 1144(a) of ERISA is a federal defense to state-law claims, otherwise known as "conflict preemption," as opposed to "complete preemption" under section 1132(a), which creates federal jurisdiction. *See Franciscan Skemp Healthcare, Inc.* v. *Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008); *Rice* v. *Panchal*, 65 F.3d 637, 640 (7th Cir. 1995).

To show ERISA preemption of the breach of contract claim, Lutheran Life attaches to its motion to dismiss a copy of the ERISA plan, which states that it has an "Effective Date" of December 3, 2018. (Dkt. 6-1 at 5.) Lutheran Life submits that this is the plan that is referenced in the change of control severance payment agreement, and it attaches a declaration from Bentley, attesting that the attached plan is a true and correct copy that is kept in the regular and ordinary course of business. (*Id.* at 2.)

For her part, Smith questions the authenticity of the attached plan and, through a declaration (dkt. 12 at 19–21), suggests that one never existed because she had never been provided a copy of it during her employment. She acknowledges, though, that she had been sent an identical copy of the plan (but lacking a signature at the end of it) in response to her termination notice letter, in which she had alerted Lutheran Life that she had never received a copy of the plan and had "been told by very reliable sources that no such 'Plan' was created." Smith also attaches a declaration from Jantzen, who states that she "was not aware of the adoption of a plan or any change to the severance agreement[.]" (Dkt. 12 at 74.)

Smith only offers speculation about the existence or authenticity of the attached ERISA plan. There is no ambiguity or evidence disputing the fact that the plan has a December 3, 2018, effective date, predating Smith's start date, and the copy is authentic as established by Bentley's

5

declaration. The ERISA plan therefore preempts the breach of contract claim, and so the motion to dismiss the breach of contract claim is granted.

Next, Lutheran Life moves to dismiss Smith's self-styled equitable estoppel claim on the basis that equitable estoppel is a defense, not a cause of action. Although Lutheran Life is correct that equitable estoppel is a defense, *see Matthews* v. *Chi. Transit Auth.*, 51 N.E.3d 753, 780 n.11 (Ill. 2016), Smith conceded that she mislabeled the legal theory of her claim and argues that she alleged sufficient facts to state a promissory estoppel claim. For promissory estoppel, a plaintiff must allege that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on the promise, (3) plaintiff's reliance was expected and foreseeable by defendant, and (4) plaintiff relied on the promise to her detriment. *Id.* at 781.

Mislabeling a claim is not fatal because the alleged facts establish whether there is a right to relief, not alleged legal theories. *See Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Lutheran Life did not refashion its argument regarding the reasonableness of Smith's reliance to one that fit promissory estoppel's elements. That indicates waiver and is alone sufficient to deny the motion.

To be sure, there is some similarity between equitable estoppel's and promissory estoppel's reliance element, the former requiring reasonable reliance, *see DeLuna* v. *Burciaga*, 857 N.E.2d 229, 249 (Ill. 2006), and the latter requiring reliance that is expected and foreseeable. But construing Lutheran Life's argument as addressing whether reliance was expected and foreseeable still does not show that the claim fails as a matter of law. Lutheran Life's contrived interpretation of *temporary* executive housing as having an undetermined expiration date during Smith's employment lacks support, is arbitrarily narrow, and ignores the situation described in the offer letter. Smith's use of the executive housing in Illinois was necessary because she was

not required to relocate from her permanent home in Missouri. As long as she worked for Lutheran Life, Smith required housing in Illinois for those times that she needed to be there in person. In context, the only reasonable inference is that this is what temporary housing meant to the parties.

## **CONCLUSION AND ORDER**

Lutheran Life's motion to dismiss (dkt. 5) is granted in part and denied in part. The breach of contract claim is dismissed with prejudice and the promissory estoppel claim stands. A status and scheduling conference is set for January 5, 2022, at 9:45 a.m. Counsel of record will receive an email the day before the telephonic hearing with instructions to join the call.

Date: December 16, 2021

_____
U.S. District Judge Joan H. Lefkow