IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORI SMITH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 21 C 2066 |
| LUTHERAN LIFE MINISTRIES, | ) Judge Joan H. Lefkow ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

In this case, Lori Smith claims that her former employer, Lutheran Life Ministries (LLM), owes her severance payments and other compensation based on the circumstances of her departure. (Dkts. 1, 34.) Smith claimed entitlement to severance benefits under a breach of contract theory in her initial complaint (dkt. 1), and under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, in her second amended complaint (dkt. 34), but the court dismissed these claims (*see* dkts. 15, 59). Smith now asks the court to reconsider these dismissals and to grant her leave to again amend her complaint to include such claims. (Dkts. 64, 66.) For the reasons described below, Smith's motion is granted in part and denied in part.

**BACKGROUND**

The court has summarized the facts alleged by Smith at length in its previous decisions on LLM's motions to dismiss. (*See* dkts. 15, 59.) As relevant to the present motion, LLM's former CEO recruited Smith to join LLM's management team in 2018. (Dkt. 34 ¶ 13.) Smith accepted LLM's offer of employment on December 28, 2018, agreeing to terms that included 18 months' severance pay "in the event of a change of control as outlined in the agreement" and a

residence to live at when she was required to work in Illinois so that she would not have to relocate from her permanent home in Missouri. (*Id.* ¶¶ 14–16; *id.* Ex. B at 2.)

On December 28, 2018, Smith also entered into an agreement with LLM entitled "Agreement Under Lutheran Life Ministries Change in Control Severance Plan" (the Severance Agreement), which was referenced in and attached to LLM's offer letter. (*Id.* ¶ 17; *id.* Ex. A.) The Severance Agreement specifies that it is a contract, effective December 28, 2018, between Smith and LLM "under the Lutheran Life Ministries Change in Control Severance Plan [(the Reference Plan)]." (*Id.* Ex. A at Recitals.) The Severance Agreement also makes clear that "[t]his Agreement … shall be construed and enforced under [ERISA], as an unfunded welfare benefit plan." (*Id.* Ex. A ¶ 2.) The Severance Agreement states that "[i]f [Smith]'s employment is terminated during a Transition Period (a) by the LLM System other than for Cause, death, or disability, or (b) through Constructive Termination, then LLM shall pay [Smith 78 weeks' worth of severance]." (*Id.* Ex. A ¶ 3(c).) The Severance Agreement provides no definition of "Transition Period." (*See id.* Ex. A.)

Smith began her employment with LLM in February 2019, and in September 2020 LLM hired a new President and CEO. (*Id.* ¶¶ 26–27.) The new CEO reassigned many of Smith's management responsibilities to a newly created position and directed Smith to move out of the executive housing LLM had provided her. (*Id.* ¶¶ 35–38.) Smith interpreted these acts as a constructive termination under the Severance Agreement and accordingly gave notice that her last day as an LLM employee would be February 5, 2021. (*Id.* ¶¶ 39–46.) In giving notice, Smith also attempted to claim severance benefits. (*Id.*) LLM accepted her resignation but denied her claim for severance benefits. (*Id.*; *id.* Ex. E.)

Smith filed this lawsuit in April 2021, bringing a state law breach of contract claim for LLM's alleged refusal to honor the Severance Agreement and a state law promissory estoppel claim related to LLM's alleged violation of its promise to provide Smith executive housing. (Dkt. 1.) The court dismissed Smith's breach of contract claim as preempted by ERISA but allowed the promissory estoppel claim to move forward. (Dkt. 15.) Smith then amended her complaint twice, continuing to plead the state law promissory estoppel claim but replacing the breach of contract claim with ERISA enforcement and promissory estoppel claims under 29 U.S.C. § 1132. (Dkt. 34.) LLM moved to dismiss the two ERISA counts. (Dkt. 38.)

The court granted LLM's motion and dismissed the two ERISA counts with prejudice. (Dkt. 59.) As for the ERISA enforcement count, the court concluded that Smith failed to allege facts showing that LLM underwent a change of control and that she was therefore not eligible for benefits under the Severance Agreement. (*Id.* at 10–13.) The court dismissed Smith's ERISA promissory estoppel count because the complaint failed to allege facts that would establish the reasonable reliance or knowing misrepresentation elements of that claim. (*Id.* at 13–15.) The court also gave Smith leave to refile an amended complaint within 14 days properly alleging diversity jurisdiction for her remaining state law promissory estoppel claim. (*Id.* at 16.) Smith now asks the court to reconsider its dismissal of her breach of contract and ERISA claims, and she seeks leave to file a third amended complaint including all three of these previously dismissed claims.

## **ANALYSIS**

Although Smith styles her motion as a single request, she actually puts two separate issues before the court—reconsideration and leave to amend. Although Smith does not discuss the differences in procedural posture and applicable legal standard between these issues, the

3

Federal Rules of Civil Procedure take a stringent view of motions for reconsideration while embracing a liberal policy toward amendments. *See* Fed. R. Civ. P. 15(a)(2), 54, 59, 60; *Runnion ex rel. Runnion* v. *Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 521–22 (7th Cir. 2015). Accordingly, the court first considers whether it should disturb its previous rulings granting LLM's motions to dismiss before deciding whether to give Smith leave to file her third amended complaint.

A.  **Motion for Reconsideration**

Smith asks the court to reconsider its earlier rulings dismissing her breach of contract and ERISA claims. She brings this motion under Rule 60(b), which provides an avenue for obtaining relief from "a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b); *see also id.* advisory committee's note to 1946 amendment ("the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule."). But no "final judgment, order, or proceeding" has been entered in this case, as the court determined that Smith's promissory estoppel claim regarding the promise of executive housing survived LLM's motions to dismiss. (*See* dkts. 15, 59.) The court therefore construes Smith's motion as seeking relief under Rule 54, which provides that "any order … that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

Motions for reconsideration under Rule 54 "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Res., Inc.* v. *Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). A manifest error occurs "when a district

4

court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Ford* v. *City of Rockford*, No. 18 CV 50151, 2019 WL 2011104, at *1 (N.D. Ill. May 7, 2019); *accord Bank of Waunakee* v. *Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). But a motion to reconsider "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could or should have been presented to the district court prior to the judgment." *Kline* v. *United Airlines, Inc.*, No. 19 C 5291, 2021 WL 4499317, at *1 (N.D. Ill. April 5, 2021) (quoting *Popovitis* v. *Circuit City Stores*, 185 F.3d 726, 730 (7th Cir. 1999)). An argument raised for the first time in a motion to reconsider is therefore waived. *See Muskegan Hotels, LLC* v. *Patel*, 986 F.3d 692, 697 (7th Cir. 2021).

To begin, the motion seeking reinstatement of the breach of contract claim is moot because the court cannot reinstate a claim not alleged in the operative pleading. The initial complaint (dkt. 1) in which Smith brought this claim is no longer the operative complaint in the case—it was superseded by Smith's first amended complaint (dkt. 17), which was in turn superseded by her second amended complaint (dkt. 34). *See Riley* v. *Elkhart Cmty. Sch.*, 829 F.3d 886, 890 (7th Cir. 2016) ("[A]n amended complaint supersedes any prior complaint, and becomes the operative complaint."). Smith did not replead her breach of contract claim in her second amended complaint, and the law is clear that "any claim in [Smith]'s original complaint not included in her amended complaint is extinguished." *Id.* As no breach of contract claim remains in the operative complaint, there is nothing for the court to reconsider. To the extent that Smith seeks to revive her breach of contract claim based on different, new, or expanded factual allegations, that request is properly made in a motion for leave to amend and is addressed below.

5

Next, Smith asks the court to reconsider its dismissal of her ERISA claims based on the erroneous assertion that the court "mistakenly entered findings of fact without permitting Plaintiff to submit her own evidence." (Dkt. 64 at 7.) This assertion is not supported by the court's opinion. Rather, in accordance with the *Twombly-Iqbal* plausibility pleading standard, the court conducted its analysis by assuming the truth of all facts alleged in the complaint and documents attached thereto and by drawing all reasonable inferences from those facts in Smith's favor. (*See* dkt. 59.) Smith then takes issue with the court's discussion of the undefined "Transition Period" term in the Severance Agreement. She first argues that the court impermissibly imported a definition for this term from the contested "Lutheran Life Ministries Change in Control Severance Plan" (the Plan) after previously concluding Smith's allegations required it to "evaluate[ ] the sufficiency of [Smith's] complaint under the assumption that the Severance Agreement—without reference to the Plan—governs her eligibility for benefits."[1] (*Id.* at 9.) Again, this assertion is demonstrably false—the court specifically noted that it conducted its analysis "[w]ithout access to the definition of Transition Period provided by the Plan." (*Id.* at 11.)

Smith next argues that the court was wrong to look to "incomplete extrinsic evidence" to define "Transition Period" after concluding that such term is ambiguous, and instead argues that "[a]mbiguous contracts interpreted in light of extrinsic evidence must be submitted to [the] jury." (Dkt. 64 at 8–9.) But in making this argument, Smith misconstrues her burden under the plausibility pleading standard. A motion to dismiss tests whether the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] LLM contends that the Severance Agreement incorporates the terms of the Plan by reference, but Smith plausibly alleges in the second amended complaint that the Plan did not exist when she and LLM executed the Severance Agreement on December 28, 2018. Resolution of this factual dispute is not properly at issue during the motion to dismiss stage of the litigation.

misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). If a contract term is capable of more than one reasonable meaning and is therefore ambiguous, then interpretation of that term depends on the fact question of "what the contracting parties intended the clause to mean." *Teamsters Loc. Union No. 727 Health and Welfare Fund* v. *L&R Grp. of Cos.*, No. 11 CV 1747, 2016 WL 520998, at *15 (N.D. Ill. Feb. 10, 2016), *aff'd as amended* by 844 F.3d 649 (7th Cir. 2016). It therefore follows that stating a claim for enforcement of an ambiguous contract requires the plaintiff to present some factual allegations as to the parties' intent, thereby allowing the court to reasonably infer the meaning of the ambiguous language and, by extension, the defendant's liability under the contract. Here, the only factual allegation relating to what the parties intended "Transition Period" to mean was language in the offer letter explaining that the Severance Agreement "provides for 18 months' severance in the event of a change of control as outlined in the agreement." (Dkt. 34, Ex. B at 2.) The court drew the only reasonable inference it could from such allegation—that "the parties intended for 'Transition Period' to relate to such a change in the [LLM Board of Directors'] authority to manage and govern LLM." (Dkt. 59 at 12.) Thus, Smith's pleaded facts did not permit any reasonable inference that the ambiguous "Transition Period" term could be interpreted in a manner that would entitle her to relief.

Third, to the extent Smith argues that the court should have analyzed "Transition Period" differently, neither the second amended complaint nor her response brief to LLM's motion to dismiss addresses interpretation of that term. (*See* dkts. 34, 48.) As such argument is raised here for the first time when it could and should have been presented earlier, it is now waived. *See Muskegan Hotels*, 986 F.3d at 697.

Fourth, Smith argues in passing that determining whether the Severance Agreement on its own constitutes an ERISA plan is a question of fact requiring discovery and presentation to the

7

jury. (Dkt. 64 at 9.) This argument makes little sense, as Smith's second amended complaint specifically and repeatedly alleges that the Severance Agreement contained the complete terms of the applicable ERISA plan. (*See* dkt. 34 ¶¶ 23–25, 34, 56–64.) A motion to reconsider does not provide the appropriate vehicle for amending allegations made in the operative complaint. *See* Fed. R. Civ. P. 15 (discussing procedure for amending pleadings). To the extent Smith uses this argument as a basis for seeking leave to amend, it is discussed more fully below.

Finally, Smith presents no argument regarding the court's analysis of her ERISA promissory estoppel claim and therefore forfeits reconsideration of that claim. *See John K. MacIver Inst. for Pub. Policy, Inc.* v. *Evers*, 994 F.3d 602, 614 (7th Cir. 2021) ("A party who does not sufficiently develop an issue or argument forfeits it."). As Smith has not demonstrated that the court committed a manifest error in its decisions dismissing her breach of contract and ERISA claims, her motion for reconsideration of those decisions is denied.

**B.** **Motion for Leave to Amend**

The court turns next to Smith's motion for leave to file a third amended complaint bringing breach of contract, promissory estoppel, ERISA enforcement, and ERISA promissory estoppel claims. (Dkts. 64, 66.) Amendments to a pleading before trial are governed by Rule 15(a), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *O'Brien* v. *Vill. of Lincolnshire*, 955 F.3d 616, 629 (7th Cir.

8

2020) (quoting *Foman* v. *Davis*, 371 U.S. 178, 182 (1962)). Denial of a motion to amend is appropriate "if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Foster* v. *DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

1. *State Law Breach of Contract and Promissory Estoppel Claims*

To the extent that Smith's proposed breach of contract and promissory estoppel claims seek to enforce or otherwise relate to the Severance Agreement, those claims are preempted by ERISA. "In enacting ERISA, Congress included two distinct and powerful preemption provisions: complete preemption under ERISA § 502, 29 U.S.C. § 1132, and conflict preemption under ERISA § 514, 29 U.S.C. § 1144." *Halperin* v. *Richards*, 7 F.4th 534, 540 (7th Cir. 2021). Complete preemption "confers exclusive federal jurisdiction" such that "[t]he ERISA civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Franciscan Skemp Healthcare, Inc.* v. *Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008) (cleaned up). "[I]f an individual, at some point in time, could have brought [her] claim under ERISA § 502(a)(1)(B) [codified at 29 U.S.C. § 1132(a)(1)(b)], and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Id.* at 597 (quoting *Aetna Health, Inc.* v. *Davila*, 542 U.S. 200, 210 (2004)).

Additionally, conflict preemption under Section 1144(a) provides a federal defense to state law claims. *See Rice* v. *Panchal*, 65 F.3d 637, 639 (7th Cir. 1995). An ERISA plan preempts "any and all state laws insofar as they may now or hereafter relate to any employee

benefit plan," 29 U.S.C. § 1144(a), and "[a] law 'relates to' an employee benefit plan if it has a connection with or reference to such a plan," *Laborers' Pension Fund* v. *Miscevic*, 880 F.3d 927, 931 (7th Cir. 2018) (citation omitted). As a result, "ERISA preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan." *Id.*

Smith's state law claims relating to the Severance Agreement are preempted by these doctrines. Smith argues that the court should allow her breach of contract claim because the Severance Agreement is not itself an ERISA plan and the authenticity of the Plan is contested. But this argument ignores the plain language of the Severance Agreement that "[t]his Agreement … shall be construed and enforced under [ERISA] as an unfunded welfare benefit plan." (Dkt. 66 Ex. C ¶ 2); *see also N. Ind. Gun & Outdoor Shows, Inc.* v. *City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."). As Smith brings an ERISA claim under 29 U.S.C. § 1132(a)(1)(B) to enforce the Severance Agreement (*see* dkt. 66 at 13–23), ERISA completely preempts her breach of contract claim. *See Franciscan Skemp*, 538 F.3d at 596 ("Artful pleading on the part of a plaintiff to disguise federal claims by cleverly dressing them in the clothing of state-law theories will not succeed …. In these instances, the federal law has effectively displaced any potential state-law claims."). Consequently, Smith's request to amend her complaint to include the proposed breach of contract claim is denied as futile and unable to survive a renewed motion to dismiss.

As for the state law promissory estoppel count, Smith seeks to amend her complaint to recover severance benefits under the Severance Agreement, lost wages resulting from her decision to leave her prior employment based on LLM's representations as to severance and housing, and the costs she incurred related to housing. To state a claim for promissory estoppel, a

10

plaintiff must allege that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on the promise, (3) plaintiff's reliance was expected and foreseeable by defendant, and (4) plaintiff relied on the promise to her detriment. *See Matthews* v. *Chi. Transit Auth.*, 51 N.E.3d 753, 781 (Ill. 2016). Because the plain language of the Severance Agreement requires that "[t]his Agreement … shall be construed and enforced under [ERISA] as an unfunded welfare benefit plan" (dkt. 66 Ex. C ¶ 2) and determining the nature of the LLM's promise regarding severance benefits would require the court to "to interpret or apply the terms" of the Severance Agreement, *Miscevic*, 880 F.3d at 931, conflict preemption bars the state law promissory estoppel claim as it relates to the Severance Agreement. To the extent that Smith's proposed state law promissory estoppel claim seeks entitlement to severance benefits or lost wages due to her reliance on representations made in the Severance Agreement, such claim is futile and unable to survive a renewed motion to dismiss. Smith's motion to amend her complaint to include state law promissory estoppel claims related to the Severance Agreement is denied. Consistent with this court's prior orders (*see* dkts. 15, 59), Smith's motion for leave to amend her promissory estoppel claim as it relates to LLM's alleged promise of executive housing is, however, granted.

2.  *ERISA Claims*

Smith also asks the court for leave to amend her ERISA enforcement and promissory estoppel claims to add additional factual allegations regarding the meaning of the terms "Transition Period" and "change in control" as used in the offer letter and Severance Agreement. (*See* dkt. 64 at 8; dkt. 66 ¶¶ 79, 82, 86; dkt. 66 Ex. A at 1.) Specifically, Smith alleges that during her negotiations she asked LLM's then-CEO and President Jesse Jantzen for "18 months severance should reporting structure or person ([Jantzen]) change/change in title." (Dkt. 66 at ¶ 79; dkt. 66 Ex. A at 1.) Such allegation would allow the court to draw the reasonable inference

11

that the parties intended to define "Transition Period" in reference to Jantzen's employment with LLM. As the court's decision granting LLM's motion to dismiss the ERISA enforcement claim hinged on the absence of factual allegations relating to the parties' intended meaning of "Transition Period" (*see* dkt. 59 at 12), Smith's proposed amendment appears to cure this deficiency. As this is Smith's first attempt to cure her ERISA enforcement claim, she presents a good-faith basis for the new factual allegations she seeks to add, and LLM will suffer no undue prejudice from allowing amendment, the court concludes that the interests of justice favor giving leave to amend. Smith's motion for leave to amend her ERISA enforcement claim is granted.

Smith's proposed amendment to her ERISA promissory estoppel claim, however, fails to cure the deficiencies identified in the court's prior opinion. (*See* dkt. 59 at 13–15.) To state an ERISA claim for promissory estoppel, a plaintiff must show "(1) a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on that misrepresentation by the plaintiff; (4) to [her] detriment." *Schatzel* v. *Cent. States Se. and Sw. Areas Pension Fund*, 941 F. Supp. 2d 999, 1010 (N.D. Ill. 2013) (quoting *Coker* v. *Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir. 1999)). In its earlier opinion, the court explained that Smith had not adequately alleged facts supporting these elements. On the one hand, although Smith pleaded facts plausibly alleging that the Plan is a knowing misrepresentation made in writing, she did not allege that she reasonably relied on the Plan. (Dkt. 59 at 14.) On the other hand, although Smith alleged that she reasonably relied on the offer letter and Severance Agreement in deciding to accept employment with LLM, she did not adequately allege that either the offer letter or Severance Agreement contained a knowing misrepresentation. (*Id.*) These errors remain in the proposed third amended complaint, as Smith continues to allege no facts showing that she reasonably relied on the Plan or that the offer letter or Severance Agreement contained knowing misrepresentations. (*See* dkt. 66 ¶¶ 135–

86.) Because Smith has not corrected these deficiencies, her motion to amend the ERISA promissory estoppel claim is denied.

## CONCLUSION AND ORDER

For the foregoing reasons, Smith's motion for reconsideration and leave to amend is granted in part and denied in part. The court declines to reconsider its rulings on LLM's previous motions to dismiss and denies Smith's requests to amend the complaint regarding the state law breach of contract claim, the state law promissory estoppel claim as it relates to the Severance Agreement, and the ERISA promissory estoppel claim. Smith's motion to amend is granted regarding the state law promissory estoppel claim as it relates to executive housing and the ERISA enforcement claim. The court previously struck the third amended complaint as improvidently filed. (*See* dkt. 72.) The court now rescinds that order and directs the parties to treat the third amended complaint (dkt. 66) as the operative complaint in a manner consistent with this opinion. LLM shall answer or otherwise plead to the counts of the third amended complaint that the court has permitted to move forward by June 6, 2023.

Date: May 23, 2023

_____
U.S. District Judge Joan H. Lefkow